13 CIV 4896

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
BRUCE SCHWARTZ,                    )
individually and on behalf of      )
all others similarly situated,     )
                                   )
                Plaintiff,          )
                                   )
    - against -                     )          CLASS ACTION
                                   )
COMENITY CAPITAL BANK              )          JURY DEMANDED
                                   )
                Defendant.          )
------------------------------------------------x

# COMPLAINT

1. This action seeks redress for the illegal practices of Comenity Capital Bank (the "Bank"), for providing, to customers of its Barneys New York ("BNY") store credit card accounts, disclosures that violated the Truth in Lending Act ("TILA").

2. As alleged in greater detail below, the Bank failed to furnish accurate and complete disclosures in the manner mandated by TILA and by the corresponding federal regulations governing account opening disclosures that are required to be furnished in connection with new credit card accounts. More specifically, the Bank failed to furnish the full set of required disclosures regarding the rights and obligations of the consumer and the lender with respect to billing disputes and unsatisfactory merchandise or services billed to the consumer's account. The Bank also furnished inaccurate disclosures with respect to the initial

1

year's terms and did not comply with the requirement to furnish certain information in a tabular format in conjunction with credit applications.

3. TILA's purpose is to assure meaningful disclosure of credit terms in order to (i) allow consumers to compare more readily the various credit terms available; (ii) enable consumers to avoid the uninformed use of credit; and (iii) protect consumers against inaccurate and unfair billing practices. 15 U.S.C. § 1601(a). The Bank's conduct violates the express provisions of the TILA and the applicable Regulations.

4. Under the private enforcement provisions of TILA, plaintiff and the proposed class seek the recovery of statutory damages of up to $1,000,000 with respect to each of the Bank's failures to comply.

*Jurisdiction and Venue*

5. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337, as well as under 15 U.S.C. § 1640(e), because this action arises under TILA, 15 U.S.C. § 1601 *et seq.*

6. Venue is proper because the acts and transactions that give rise to this action occurred, in substantial part, in this district. Venue is also proper in this district because the Bank transacts business in this district and the interests of justice require maintenance of this action in this district.

*Parties*

7. Plaintiff Bruce Schwartz, who resides in Queens County, New York, opened the credit account in New York County, New York which is within this district.

8. Schwartz is a "consumer," as that term is defined by § 1602(h) of TILA, because this complaint arises from the Bank's offer and extension of credit to Schwartz, a credit card holder, for personal, family or household purposes.

9. Upon information and belief, the Bank is doing business in the State of New York and throughout the United States, with its principal places of business in Delaware.

10. The Bank is a "creditor," as that term is defined by § 1602(f) of TILA and Regulation Z ("Regulation Z"), 12 C.F.R. §1026.2(a)(17), because at all relevant times, the Bank, in the ordinary course of its business, regularly – *i.e.*, more than 25 times a year – extended or offered to extend consumer credit for which a finance charge is or may be imposed, which is payable in more than four installments.

*Factual Allegations*

11. Schwartz is the holder of a BNY card account issued by the Bank generally intended for the purchase of goods or services at BNY retail locations and from the BNY website.

12. Upon information and belief, Schwartz's BNY account was opened while shopping in a store located in New York County, New York on or about May 28, 2013. See Exhibit A.

13. The Bank issued Schwartz account-opening disclosures on or about May 28, 2013, which are attached as Exhibit B.

14. All class members herein, as defined below, were furnished account-opening disclosures for BNY credit accounts issued by Comenity Capital Bank similar to the one attached as Exhibit B.

*Class Allegations*

15. Schwartz brings this action individually and on behalf of all persons similarly situated.

16. The proposed class (the "Class") consists of all persons who, according to the Bank's records, (i) opened a BNY account with the Bank as the original issuer and made an initial purchase on that account on or after March 1, 2013; and (ii) were furnished, before that purchase was made, account-opening disclosures with a billing rights statement substantially similar to that in Exhibit B, or no billing rights statement at all.

17. Specifically excluded from this class are the Bank, any entity in which the Bank has a controlling interest, and the officers, directors, affiliates, legal representatives, heirs, successors, subsidiaries or assigns of any such individual or entity.

18. The members of the class for whose benefit this action is brought is so numerous that joinder of all Class members is not practicable. In light of the tens of thousands of credit cards issued by the Bank every year, the number of class members is believed to be in excess of 1,000 persons.

19. Plaintiff's claims are typical of, if not identical to, all members of the class and Plaintiff does not have any interest that is adverse or antagonistic to the interests of the class. If the conduct of the Bank violates TILA as applied to Plaintiff, then it violates TILA with respect to the Class.

20. Plaintiff will fairly and adequately protect the interests of the Class as she is committed to the vigorous prosecution of this action and, to that end, has retained competent counsel experienced in complex litigation of this nature.

21. The Class is proper for certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure. The Defendants' actions complained of herein are generally applicable to all Class members, thereby making final injunctive relief appropriate with respect to the class as a whole.

22. The class is also proper for certification under Federal Rule of Civil Procedure 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein. Because damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impracticable for the class to seek redress individually for the wrongs they have suffered. Members of the Class do not have a particular interest in individually controlling the prosecution of separate actions.

23. There are questions of law and fact which are common to the members of the Class and which predominate over questions affecting only individual members. Common questions of law and fact include, but are not limited to, whether the Bank has a standardized procedure by which it fails to make a

disclosure of a credit customer's billing rights compliant with TILA and Regulation Z.

24. Upon information and belief, the Class consists of thousands of customers.

25. Thus, a class action is an appropriate and superior method for the fair and efficient adjudication of the present controversy given the following factors:

   a) Common questions of law and/or fact predominate over any individual questions which may arise and, accordingly, there would accrue enormous savings to both the Court and the Class in litigating the common issues on a class-wide instead of a repetitive individual basis; and

   b) The aggregate volume of the individual class members' claims, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with repetitive individual litigation.

26. Class certification is also fair and efficient because prosecution of separate actions by individual Class members would create a risk of differing adjudications with respect to such individual members of the Class, which as a practical matter may be dispositive of the interests of other members not parties to the adjudication, or substantially impede their ability to protect their interests. Moreover, since the actual monetary damages suffered by, or statutory damages available to, individual Class members may be relatively small, although significant in the aggregate, the expenses and burdens of individual litigation make it impossible or effectively impossible for the members of the Class to seek individual redress for the TILA violations committed by Defendant.

27.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. The records of the individuals encompassed within the Class are in Defendants' possession.

## COUNT I

### *Violations of the Truth in Lending Act*

28.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

29.     Congress authorized the Federal Reserve Board ("FRB" or "Board") to promulgate regulations granting it broad authority to effectuate the purposes of TILA; that authority is now delegated to the Bureau of Consumer Financial Protection ("Bureau"). 15 U.S.C. §1604(a)(2008); 15 U.S.C. §1604(a).

30.     The set of regulations that the FRB promulgated to implement TILA is known as Regulation Z, 12 C.F.R. §226.1 *et seq.;*

31.     To reflect its assumption of TILA rulemaking authority as of July 21, 2011, the Bureau issued an interim final rule republishing Regulation Z with only minor changes that did not impose any new substantive obligations on creditors. 76 FR 79768 (Dec. 22, 2011); 12 C.F.R. §1026.1 *et seq.*

32.     TILA requires the creditor to furnish an array of account-opening disclosures before a credit consumer initially uses his card account to purchase goods or services.15 U.S.C. § 1637(a).

33. One of the TILA-mandated account-opening disclosures is "[a] statement, in a form prescribed by regulations of [previously, the Board, and now] the Bureau of the protection provided by sections 1666 and 1666i of this title to an obligor and the creditor's responsibilities under sections 1666a and 1666i of this title." 15 U.S.C. §1637(a)(7).

34. The statement of obligor's protections and the creditor's obligations prescribed by the Board and adopted by the Bureau is contained in Model Form G-3(A). 12 C.F.R. §1026.6(b)(5)(iii);. 12 CFR Part 1026, Appendix G.

35. The Bank's account-opening disclosures provided to Schwartz contained several omissions with respect to the obligor's protections and the parties' obligations.

36. The billing rights notice ("BRN") that the Bank furnished Schwartz, as seen in Exhibit B, is not substantially similar to the Model Form G-3(A), reproduced as Exhibit C, in language or substance.

37. The BRN omitted a warning to consumers who would initiate billing-error correspondence to contact the creditor "[a]t least 3 business clays before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong." 12 C.F.R. § 1026 Appendix G, Model Form G-3(A).

38. The BRN also omitted the creditor's responsibility, within 30 days of receiving a consumer's billing-error correspondence, to inform the consumer that it indeed received such correspondence, irrespective of whether the purported error had or had not already been corrected by then.

39. The BRN also omitted the preconditions governing the consumer's limited right not to pay for a purchase of goods or services when she is dissatisfied with that purchase: more specifically, it failed to specifically disclose that in order for the consumer to exercise this right, the credit card itself, rather than cash advances or checks from the card account, must have been directly used for the purchase and the purchase must not have already been fully paid for.

40. The BRN also omitted the consumer's responsibility to contact the creditor in writing (or electronically) when she is dissatisfied with a purchase of goods or services in order to exercise that right not to pay the remaining amount due on the purchase.

41. The BRN also employed language throughout the notice that was dissimilar to the language contained in Model Form G-3(A).

42. Regulation Z also requires that account-opening disclosures reflect the legal obligations of the parties. 12 C.F.R. §1026.5(c).

43. The account-opening agreement the Bank furnished also states in its "Changes and Additions" section that the lender may change any term or add new terms to the agreement without limitation, so long as it provides to the consumer any advance notice required by law. Exhibit B.

44. However, in the first 12 months a credit account is open, a creditor is obliged not to impose, and a credit consumer is not obliged to pay, any additional or higher fees or interest charges over and above those provided for in the account-opening disclosures. 15 U.S.C. §1666i-2(a); 12 C.F.R. §1026.55(b)(3)(iii).

9

45. As such, in failing to timely provide account-opening disclosures that reflected the legal obligations of the parties, the Bank further failed to comply with Regulation Z and TILA. 15 U.S.C. § 1637(a); 12 C.F.R. §1026.6.

46. The Bank also failed to properly furnish, in its application for credit, information in a tabular format with the heading "Credit Card Tips from the Consumer Financial Protection Bureau" and the corresponding website established by the Bureau for that information. 15 U.S.C. § 1637(c)(5); 12 C.F.R. §1026.6(b)(2)(xiv); 12 C.F.R. § 1026 Appendix G, Model Form G-17(B).

47. Without being properly informed by the Bank of the additional protections that using a BNY card account may provide, and unable to compare those to the benefits of using competing forms of credit or payment, Plaintiff and the Class were injured.

48. With respect to each of the Bank's violations of TILA for inaccurate disclosures, as alleged above, Plaintiff and the Class are entitled to recover up to $1,000,000 in statutory damages, together with costs and reasonable attorney fees. 15 U.S.C. § 1640(a)(2).

WHEREFORE, Plaintiff Bruce Schwartz prays on his behalf and on behalf of the Class that judgment be entered against Defendants as follows:

(1) An order certifying the proposed Class under Federal Rule of Civil Procedure 23(b)(2) and, additionally or in the alternative, an order certifying the Class under Federal Rule of Civil Procedure 23(b)(3);

(2)   A declaration that the Bank's systematic and standard policy of furnishing account documents that make inaccurate or incomplete disclosures to customers with respect to billing rights violates the Truth in Lending Act;

(3)   An injunction permanently prohibiting the Bank from engaging in the conduct described;

(4)   Maximum statutory damages as provided under 15 U.S.C. § 1640(a)(2);

(5)   Attorney fees, litigation expenses, and costs; and

(6)   Such other and further relief as to this Court may seem just and proper.

*Jury Demand*

Plaintiff respectfully requests a trial by jury.

Dated:  New York, New York
        July 15, 2013

Respectfully Submitted,

By:   _____
      Brian L. Bromberg
      One of Plaintiff's Attorneys

Attorneys for Plaintiff

Brian L. Bromberg
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
(212) 248-7906

Harley J. Schnall
Law Office of Harley J. Schnall
711 West End Avenue
New York, NY 10025
(212) 678-6546

# Exhibit A

Pick Up 5/28/13

# BARNEYS
# NEW YORK

Barneys New York
660 Madison Ave
New York, NY 10065
212-826-8900

Store #: 3          Reg #:   104
Trn # : 43837    Emp: Emy
Date  : 05/28/2013    Time: 11:18
SALE

---

*** SALE ***

Salesperson: 88804 Emy

00505023969681   RLBL Tie
 1 SZ NO DIM BLUE
         1 @      79.00       79.00 T

Subtotal                     79.00
Tax @ 4.375 %                 0.00
Tax @ 4.50 %                  0.00
                         -----------
Total                        79.00

---

Total Units Taken:  1
BNY Charge                   79.00
XXXXXX█
00001989

WHAT'S NEW?
Enter your email at BARNEYS.COM
to receive vital and
fabulous communications
or just give it to us now!

We invite you to
Follow us on Twitter @BarneysNY
and like us on Facebook at
http://www.facebook.com/barneysNY

0000310404383708804

Customer Copy

# Exhibit B

| Interest Rates and Interest Charges | |
|---|---|
| Annual Percentage Rate (APR) for Purchases | From **6.5%** to **21%**, which varies by state. See the "Cost of Credit" section below for the APR that applies where you reside. |
| Paying Interest | Your due date is at least 26 days after the close of each billing cycle. We will not charge you any interest on purchases if you pay your entire balance by the due date each month. |
| Minimum Interest Charge | If you are charged interest, the charge will be no less than $0.50. |
| For Credit Card Tips from the Federal Reserve Board | To learn more about factors to consider when applying for or using a credit card, visit the website of the Federal Reserve Board at http://www.federalreserve.gov/creditcard. |

| Fees | |
|---|---|
| Annual Fee | None |
| Penalty Fees | |
| • Late Payment | From **$0** to **$25**, which varies by state. See the "Late Payment Fee" section below for the fee that applies to your account. |
| • Returned Payment | From **$0** to **$25** of either the amount past due, the average daily balance, or the outstanding balance, which varies by state. See the "Returned Check Fee" section below for the fee that applies to your account. |

How We Will Calculate Your Balance: We use a method called "average daily balance (including new purchases)". See your account agreement for more details.

Billing Rights: Information on your rights to dispute transactions and how to exercise those rights is provided in your account agreement.

In this Barneys New York Retail Installment Credit Agreement/ Security Agreement (Agreement), the words "you" and "your" refer to any person who signs an Application for a Barneys New York Credit Card Account ("Account"), has requested and is issued a Barneys New York credit card, or is authorized to use the Account, and the words "we," "us," and "our" refer to Barneys, Inc., P.O. Box 326, Lyndhurst, NJ 07071-0326, and any person to whom this Agreement and/or the indebtedness governed by this Agreement may be assigned (which you agree may occur without advance notice to you).

**Promise to Pay; When Agreement is Effective:** You are responsible for and agree to pay all amounts owed on your Account by money order or check payable in United States currency drawn on a United States financial institution. When you sign the Application for this Account, you will be requesting that we issue our credit card to you, and you will be agreeing to everything set forth in this Agreement. Therefore, before you sign the Application for this Account, you should read this entire Agreement, which includes the cost of credit disclosures required by federal law. The information you provide on the Application that identifies you is incorporated in this Agreement by reference. This Agreement will not be effective until we approve your Application and then, after that, only if you or someone authorized by you charge a purchase to your Account. Also, until you or someone authorized by you use your Account, you will not be responsible for any use of the credit card after its loss or theft.

**Cost of Credit:** No Finance Charge is imposed in any monthly billing period (a) in which there is no balance at the beginning of the billing period (the "Previous Balance" shown on your monthly statement) or (b) in which payments received and credits issued within 26 days after the billing date shown on your monthly billing statement ("statement") equal or exceed the balance at the beginning of the billing period. If we do not receive the full amount due (the "New Balance" shown on your statement) within 26 days after the billing date shown on your statement, we will impose a Finance Charge, computed on the outstanding Average Daily Balance from month to month, by applying a monthly periodic rate of 1.75%.

**(ANNUAL PERCENTAGE RATE 21%)**, except for residents of the following states:

| State | Monthly Periodic Rate | APR |
|---|---|---|
| AL | 1.75% up to $750 | 21.0% |
| | 1.5% over $750 | 18.0% |
| AR | .54% | 6.5% |
| HI, LA, MA | 1.5% | 18.0% |
| MN, NC, SC | 1.5% | 18.0% |
| NE | 1.75% up to $499 | 21.0% |
| | 1.5% $500 and more | 18.0% |

A minimum **FINANCE CHARGE** of $.50 is imposed in any month in which the Finance Charge that would result from the application of the monthly periodic rate is less than $.50, except there is no minimum **FINANCE CHARGE** if you reside in AR, DC, HI, IL, IA, MD, NE, NM, NC and RI.

**Method of Computing Finance Charge:** We figure the Finance Charge on your Account by applying the above-stated monthly periodic rate to the "Average Daily Balance" of your Account (including current transactions, except for residents of MN and NM). To get the "Average Daily Balance" we take the beginning balance of your Account each day, add any new purchases (except for residents of MN and NM, we do not add any purchase made in the current billing period) and subtract any payments and credits, and any unpaid Finance Charge. This gives us the daily balance. Then, we add up all the daily balances for the billing period and divide the total by the number of days in the billing period. This gives us the "Average Daily Balance."

**Minimum Monthly Payment:** You agree to pay at least the minimum monthly payment shown on your statement on or before the payment due date shown on that statement. Your minimum monthly payment will be 10% of the New Balance, rounded up to the nearest whole dollar, but not less than $35.00, or the entire New Balance if it is less than $35.00. The minimum monthly payment will include any past due amount. You may pay more than the minimum monthly payment due in any month but, if you do, and there is a balance due, you must continue to make minimum monthly payments in future months. **You may at any time pay your total indebtedness (the New Balance).**

**Security Interest In Goods Purchased:** For residents of all states except CT, GA, MO on goods that have a cash price of under $150, and NY on goods that have a cash price of under $200, where we do not retain a security interest, we will retain a purchase money security interest in the goods purchased under this Agreement until those goods and any related Finance Charge and Late Payment Fee are paid for in full. Your payments will be allocated to pay off the goods purchased as follows: first to any unpaid Finance Charge, then to pay off each purchase, oldest purchase first. Goods purchased on the same day will be paid off by allocating your payments to the lowest price item(s) first. For New York residents, we will not retain a security interest in goods for longer than five years from the date of purchase.

**Returned Check Fee:** If any check sent to us in payment on your Account is returned to us unpaid by your bank, we may charge you a Returned Check Fee of $25.00, except the Returned Check Fee is $20.00 in CT, HI, ID, IN, IA, NJ, NY, TN and UT; and $15.00 in CA, MD, MO, DE, MA, NE, NM and TX. This charge is not imposed for residents of PA, VT and WY. You agree that we may add any Returned Check Fee to the balance due on your Account. Notwithstanding the foregoing, no Returned Check Fee will be charged in excess of the amount permitted by law.

**Late Payment Fee:** If we fail to receive your payment of the minimum monthly payment within 10 days after the due date shown on your statement (15 days in CA, ME and MA; 21 days in TX; 30 days in NC; 40 days in RI), we may impose a Late Payment Fee. The Late Payment Fee is $25.00 in all states except as follows: In IN, $16.50. The amount of the late payment fee is subject to change as provided in Ind. Code § 24-4.5-1-106; in CA, CO, DC, IA and LA, $15.00; in GA, $18.00; in RI, $12.00; in FL, NJ and TX, $10.00; in AZ, KS and MO, $5.00 if the minimum payment is $25.00 or less, otherwise $10.00; in NC, $5.00 if outstanding balance is under $100.00, otherwise $10.00; in WA, 10% of average daily balance for prior 30-day period, when such balance is less than $100.00; in WV; lesser of 5% of amount past due or $15.00; in MA, lesser of 10% of outstanding balance or $10.00; in ME, lesser of 5% of amount past due or $10.00; in IL, KY and WY, greater of 5% of amount past due or $10.00; in ID, greater of 5% of amount past due or $15.00; in NE, greater of 5% of amount past due or $5.00; in UT, greater of 5% of amount past due or $25.00; in AL, greater of 5% of amount past due or $10.00 but not more than $25.00; in OK, 5% of amount past due but not more than $19.00 and not less than $5.00; in SC, 5% of amount past due but not more than $14.50 and not less than $5.80. The amount of the late payment fee is subject to change as provided in S.C. Code § 37-1-109. No Late Charge will be imposed in DE, MT, NM, TN and VT. You agree that we may add any Late Payment Fee to the balance due on your Account. Notwithstanding the foregoing, no Late Payment Fee will be charged in excess of the maximum amount permitted by law, which currrently is $25.00.

**Default/Collection Costs:** If you fail to pay any minimum monthly payment when due, if you declare bankruptcy, or if you die, it will be a default, and, subject to any right you may have under state law to receive notice of and to cure such default, we may declare the entire unpaid balance in the Account due and payable (if you reside in WI you will not be in default unless we fail to receive the required minimum monthly payment on two occasions in any 12-month period). If you are in default we may also repossess any article of merchandise in which we still retain a security interest, but we will do so only in the manner and to the extent permitted by applicable law. Should we repossess any article of merchandise, we will not proceed against you for the difference between the proceeds of the sale of that merchandise and the outstanding balance due. If this Account is referred to an attorney who is not our salaried employee and we prevail in a suit against you to collect the amount you owe, in addition to the full amount owed and any court costs, you agree to pay our reasonable attorney's fees of 20% of the total amount due, or such lesser amount that may be permitted by applicable law (in CO, CT, KS, MO, MT, NC, OK (when amount financed is more than $3,600) and SC our reasonable attorney's fees will be 15% of the total amount due, and in NJ our reasonable attorney's fees will not exceed 20% of the first $500 of your outstanding balance and 10% of the excess). No attorney's fees will be imposed in AL, (when the unpaid balance is under $300), DC, IA, ME, NE, OH, OK (when amount financed is less than $3,600) PR, SD, WI and WV, or in any state, or in any amount, where not permitted by law.  In the states of CA, CT, DE, NC, NH, NY and PA, and in any other state where required by law, we will pay your reasonable attorney's fees if you prevail in a suit we bring against you or if you prevail in a suit you bring against us under this Agreement.

**Canceling or Limiting Your Credit:** We have the right at any time to limit or terminate the use of your Account without giving you notice in advance. All credit cards we issue remain our property and, if requested, you agree to return any credit card issued to you. You agree to tell us promptly if any credit card we issue to you is lost or stolen. In area code(s) 212 and 718 dial 212-833-2091, in area code(s) 310, 323 and 213 dial 310-777-5851 and in area code(s) 973, 732, 908 and 201 dial 201-531-7780. All other areas dial 1-800-926-5393.

**Changes and Additions:** We may (a) change any term of this Agreement, including without limitation the rate of Finance Charge, and (b) add new terms to this Agreement, including new terms that do not pertain to subject matters addressed in this Agreement, by furnishing you notice of the change, or the addition, to the extent required by applicable law. If permitted by applicable law, all changed terms and all new terms may at our option be applied to the balance existing in your Account at the time of the change, or the addition, as well as to any future balance.

**Credit Investigation:** You authorize us to investigate your credit history and obtain information about your creditworthiness by obtaining consumer reports and by making direct inquiries of businesses where you have accounts and where you work. We may request consumer reports from consumer reporting agencies in considering your Application for your Account and later in connection with updates, renewals, extensions of credit, or to collect amounts owed on the Account. Upon your request we will tell you whether a consumer report was requested and

the name and address of any consumer reporting agency that furnished the report. You agree we may report your performance under this Agreement to consumer reporting agencies and others who may properly receive the information. Notice: we are required to tell you that a negative credit report reflecting on your credit record may be submitted to a consumer reporting agency if you fail to fulfill the terms of your credit obligations.

**Disputed Accuracy of Credit Report:** If you believe we have reported inaccurate information about you to a consumer reporting agency, please contact us at P.O. Box 326, Lyndhurst, NJ 07071-0326. When you notify us, identify the information in question and tell us why you believe it is inaccurate. If you have the credit report that includes the information believed to be inaccurate, include a copy of that credit report.

**Disputed Amounts:** All written communications about disputed amounts, including without limitation any check or other payment instrument in an amount less than the full amount due that you send to us marked "paid in full," you tender with other conditions or limitations, or you otherwise tender as full satisfaction of a disputed amount, must be sent to us at the address for "Billing Inquiries" shown on your monthly statement.

**No Waiver By Us:** You agree we have the right without notice to you to delay or refrain from enforcing our rights under this Agreement without losing them. For example, and without limitation, you agree we may extend the time to make payments without extending the time to make other payments, accept late or partial payments without waiving our right to have future payments made when they are due, and waive any charge or fee without losing our right to impose that charge or fee when it is due under this Agreement.

**Telephone Monitoring:** In order to assure that you receive the best possible customer service and that our associates are complying with our policies and all applicable laws in their contacts with you, on occasion a second associate may listen to incoming and outgoing customer calls.

**Miscellaneous:** This Agreement will survive termination of your Account until all amounts due under this Agreement are paid. If any part of this Agreement is determined to be invalid under any law, the invalidity will not invalidate the remaining parts of this Agreement.

**Governing Law:** This Agreement is governed by federal law and the law of your state of residence if you reside in a state where we have a retail outlet. If you reside in or move to a state where we do not have a retail outlet, you agree that this Agreement is governed by federal and New Jersey law. You agree to notify us promptly in writing if you move. After we receive your notice that you have moved to another state, all terms that are applicable to your new state of residence in this Agreement will apply to the entire balance in your Account, including any unpaid balance incurred before you moved.

**Notice to Florida Residents:** The Finance Charge rate shown above is authorized by Chapter 655 of the Fla. Statutes.

**Notice to Michigan Residents:** The Seller retains a security interest in the subject matter of this Agreement.

**Notice to Texas Residents:** The Finance Charge rate shown above is authorized by the Market Competitive Rate ceiling that is in effect under Tex. Fin. Code Ann. § 345.152. To contact us about this Account call 1-800-926-5393. This contract is subject in whole or in part to Texas law which is enforced by the Consumer Credit Commissioner, 2601 North Lamar Boulevard, Austin, Texas 78705-4207, Phone (512) 479-1285 or (800) 538-1579. Contact the Commissioner relative to any inquiries or complaints.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBT OR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

NOTICE TO THE BUYER: 1. DO NOT SIGN THE APPLICATION/AGREEMENT BEFORE YOU READ IT OR IF THIS AGREEMENT CONTAINS ANY BLANK SPACES. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT. 3. YOU MAY AT ANY TIME PAY THE TOTAL BALANCE OUTSTANDING UNDER THIS AGREEMENT WITHOUT INCURRING ANY ADDITIONAL CHARGE. KEEP THIS AGREEMENT TO PROTECT YOUR LEGAL RIGHTS. 4. YOU MAY UNDER CERTAIN CIRCUMSTANCES REDEEM THE PROPERTY, IF REPOSSESSED BECAUSE OF YOUR DEFAULT, AND YOU MAY, UNDER CERTAIN CONDITIONS, REQUIRE A RESALE OF THE PROPERTY REPOSSESSED. 5. THE SELLER HAS NO RIGHT TO UNLAWFULLY ENTER YOUR PREMISES OR COMMIT ANY BREACH OF THE PEACE TO REPOSSESS GOODS PURCHASED UNDER THIS AGREEMENT. ADDITIONAL NOTICE FOR MASSACHUSETTS AND WASHINGTON RESIDENTS: 6. YOU MAY CANCEL A PURCHASE UNDER THIS AGREEMENT IF IT HAS BEEN SIGNED BY A PARTY THERETO AT A PLACE OTHER THAN THE ADDRESS OF THE SELLER, WHICH MAY BE HIS MAIN OFFICE OR BRANCH THEREOF; PROVIDED, YOU NOTIFY THE SELLER IN WRITING AT HIS MAIN OFFICE OR BRANCH, BY ORDINARY MAIL POSTED, BY TELEGRAM SENT OR BY DELIVERY, NOT LATER THAN MIDNIGHT OF THE THIRD BUSINESS DAY FOLLOWING A PURCHASE UNDER THIS AGREEMENT.

YOU ACKNOWLEDGE RECEIPT OF A COPY OF THIS RETAIL INSTALLMENT CREDIT AGREEMENT

_____
Date   Buyer's Signature

_____
Date   Co-Buyer's Signature

Creditor:
Barneys, Inc.
P.O. Box 326
Lyndhurst, N.J. 07071-0326

Vince Phelan
Executive Vice President
Chief Financial Officer

## YOUR BILLING RIGHTS:
## KEEP THIS NOTICE FOR FUTURE USE

Notice: The following is important information regarding your right to dispute billing errors. This notice contains important information about your right and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet of paper at the address for Billing Inquiries listed on your bill. Write to us as soon as

possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, please provide us with the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error.

If you need more information, describe the item you are not sure about.

Your Rights and Our Responsibilities After
We Receive Your Written Notice

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question. [partially obscured by header] have to pay any finance charges related to the amount in question. If no error is found, you may have to pay finance charges, and will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

Special Rule for Credit Card Purchases

If you have a problem with the quality of property or services you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services.

## BARNEYS NEW YORK, INC. PRIVACY POLICY

At Barneys New York, we are committed to providing you the finest products along with excellent service. In order to accomplish this, we gather, use and share certain personal information.

Our Privacy policy describes what we gather, with whom we share it, and how you may direct us not to share certain information with certain parties.

As a Barneys New York charge account customer, you may share personal information with us. We share this information with our corporate affiliates in order to process transactions that you have requested on your Barneys New York charge account. We also use this information to improve our services to you and for marketing and promotional purposes. Because the security of your personal information is very important to us, we restrict access to your nonpublic personal information to those associates who need to know that information to provide products or services to you. We also maintain physical, electronic and procedural safeguards that comply with federal regulations to protect your nonpublic personal information.

### Privacy Policy

We collect non-public information about you from the following sources:

- Information we receive from you on credit applications, registration or other forms such as: name, address, telephone number, e-mail addresses, social security number and date of birth;
- Information about your transactions with us (such as account balance, payment history and usage)
- Information we receive from consumer reporting agencies (credit bureaus), such as your credit score and credit history.

### Use and disclosure of information

We use the information we collect to process your purchase transactions, to send you marketing and promotional materials by mail or e-mail, and to help us improve our services to you. We may provide information we collect to third party service providers that help us bring you our products and services, for example, a company that distributes our catalogs and/or mailing of billing statements. We may provide information we collect to carefully selected third parties when we believe their products or services may be of interest to you.

We may disclose all of the non-public information that we collect as stated above whether or not you are a current or former customer.

### Opt Out Procedures

If you prefer that we not disclose non-public personal information about you to nonaffiliated third parties, you may opt out of those disclosures, that is, you may direct us not to make those

disclosures (other than disclosures permitted by law). If you wish to opt out of disclosures to nonaffiliated third parties (other than disclosures permitted by law), you may do so by writing to Barneys New York, Attn. Credit Services, P.O. Box 326, Lyndhurst, NJ 07071-0326 or e-mailing us at creditservices@barneys.com.

### Changes to this Policy

We may make changes to this Privacy Policy at any time and will provide you with any notice of such changes as required by law. This policy replaces any other polices about our customer information practices.

# Exhibit C

you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services.

There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and

(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**G–3(A)—Long-Form Billing-Error Rights Model Form (Plans Other Than Home-Equity Plans)**

*Your Billing Rights: Keep This Document For Future Use*

This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.

*What To Do If You Find A Mistake On Your Statement*

If you think there is an error on your statement, write to us at:
 [Creditor Name]
 [Creditor Address]
[You may also contact us on the Web: [Creditor Web or email address]]

In your letter, give us the following information:
• *Account information:* Your name and account number.
• *Dollar amount:* The dollar amount of the suspected error.
• *Description of problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:
• Within 60 days after the error appeared on your statement.
• At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors *in writing* [or electronically]. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

*What Will Happen After We Receive Your Letter*

When we receive your letter, we must do two things:

1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.

2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

While we investigate whether or not there has been an error:
• We cannot try to collect the amount in question, or report you as delinquent on that amount.
• The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
• While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
• We can apply any unpaid amount against your credit limit.

After we finish our investigation, one of two things will happen:
• *If we made a mistake:* You will not have to pay the amount in question or any interest or other fees related to that amount.
• *If we do not believe there was a mistake:* You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within *10 days* telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

*Your Rights If You Are Dissatisfied With Your Credit Card Purchases*

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)

2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.

3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us *in writing* [or electronically] at:
 [Creditor Name]
 [Creditor Address]
 [[Creditor Web or e-mail address]]

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

**G–4—Alternative Billing-Error Rights Model Form (Home-Equity Plans)**

BILLING RIGHTS SUMMARY

*In Case of Errors or Questions About Your Bill*

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us [on a separate sheet] at [address] [the address shown on your bill] as soon as possible. [You may also contact us on the Web: [Creditor Web or e-mail address]] We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
• Your name and account number.
• The dollar amount of the suspected error.
• Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

*Special Rule for Credit Card Purchases*

If you have a problem with the quality of goods or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. You have this protection only when the purchase price was more than $50 and the purchase was made in your home state or within 100 miles of your mailing address. (If we own or operate the merchant, or if we mailed you the advertisement for the property or services, all purchases are covered regardless of amount or location of purchase.)