UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

Bruce Schwartz, individually and on
behalf of all others similarly
situated,                                    13 Civ. 4896 (JGK)

                Plaintiff,          OPINION AND ORDER

        - v.-

Comenity Capital Bank,

           Defendant.
————————————————————————————

JOHN G. KOELTL, District Judge:

    The Plaintiff, Bruce Schwartz brings this action against

defendant Comenity National Bank ("Comenity") alleging

violations of the Truth in Lending Act ("TILA"), 15 U.S.C.

§ 1637, and the enacting regulation ("Regulation Z") prescribed

by the Consumer Financial Protection Bureau (the "Bureau"), 12

C.F.R. pt. 1026.  This Court has subject matter jurisdiction

pursuant to 15 U.S.C. § 1640(e).  The defendant now moves for

summary judgment pursuant to Federal Rule of Civil Procedure 56.

For the reasons set forth below, the defendant's motion is

granted in part and denied in part.

I.

    Unless otherwise stated, the following facts are

undisputed.

**A.**

Comenity is a bank chartered in the state of Delaware. Comenity issues consumer credit card accounts for use at specific retailers, including the Barneys New York branded credit card account (the "Barneys Card"). Comenity acquired the Barneys Card portfolio of accounts on March 8, 2013. From March 8, 2013, until June 5, 2013, new Barneys Card customers received account opening forms identical to the forms used by Barneys New York prior to Comenity's acquisition of the portfolio of accounts, including a credit card agreement with a billing rights notice (BRN) explaining the customer's rights under TILA. Def.'s 56.1 Stmt. ¶¶ 1-5, 11; Pl.'s 56.1 Resp. ¶¶ 1-5, 11.

In May 2013, Mr. Schwartz applied for and received a Barneys Card and made a $79.00 purchase. Mr. Schwartz received the credit card agreement and BRN at that time. Def.'s 56.1 Stmt. ¶¶ 6-8; Pl.'s 56.1 Resp. ¶¶ 6-8. The relevant portion of the BRN stated:

> YOUR BILLING RIGHTS:
> KEEP THIS NOTICE FOR FUTURE USE
>
> NOTICE: The following is important information regarding your right to dispute billing errors. This notice contains important information about your right and our responsibilities under the Fair Credit Billing Act.
> . . . .
> Your Rights and Our Responsibilities After We Receive Your Written Notice [of a Billing Error or Question.]

> We must acknowledge your letter within 30 days,
> unless we have corrected the error by then.
> Within 90 days, we must either correct the error
> or explain why we believe the bill was correct.
>
> After we receive your letter, we cannot try to
> collect any amount you question, or report you as
> delinquent. We can continue to bill you for the
> amount you question, including finance charges,
> and we can apply any unpaid amount against your
> credit limit. You do not have to pay any
> questioned amount while we are investigating, but
> you are still obligated to pay the parts of your
> bill that are not in question.

. . . .

Special Rule for Credit Card Purchases

> If you have a problem with the quality of
> property or services you purchased with a credit
> card, and you have tried in good faith to correct
> the problem with the merchant, you may have the
> right not to pay the remaining amount due on the
> property or services.

Compl. Ex. B.

On June 5, 2013, Comenity began using a new credit card
agreement form that differed from the one customers had received
between March 8, 2013 and June 5, 2013.  Def.'s 56.1 Stmt. ¶ 9;
Pl.'s 56.1 Resp. ¶ 9.  That agreement included a BRN that
mirrored the model form provided by the Bureau in the appendix
to Regulation Z.  See Compl. Ex. C.

On June 17, 2013, Comenity mailed a change in terms of
service form to holders of Barneys Card accounts.  The change in
terms of service included a provision that required disputes be

arbitrated and waived the right to bring a class action claim against Comenity.  This provision could be rejected by providing a signed, written notice to Comenity within 45 days after the change in terms of service was provided to the customer.  Mr. Schwartz timely opted out of the arbitration provision and class action waiver in a written notice.  The change in terms of service also included a notice and cure provision which requires customers to provide Comenity with written notice of any claim "arising out of or related to this Agreement" and a "reasonable opportunity, not less than thirty days" to cure the problem prior to initiating a lawsuit or an arbitration.  Def.'s 56.1 Stmt. ¶¶ 10-14; Pl.'s 56.1 Resp. ¶¶ 10-14.

## B.

On July 15, 2013, the plaintiff brought this suit alleging that the BRN provided by Comenity to Mr. Schwartz and all customers who opened accounts between March 8, 2013 and June 5, 2013 did not adequately disclose the rights of the credit card holders in accordance with TILA.  The sole cause of action is for a violation of the account-opening disclosure requirements of TILA pursuant to 15 U.S.C. § 1637(a)(7) and 12 C.F.R § 1026.6.  The plaintiff contends that the BRN is inadequate because it is not substantially similar to Model Form G-3(A) (the "Model Form"), published by the Bureau as an appendix to Regulation Z, and allegedly omits four essential elements: (1) a

4

warning to consumers who initiate billing error disputes to contact the creditor no less than three business days before any automated payment is scheduled; (2) a notice that the creditor must acknowledge receipt of a billing error correspondence within thirty days of receiving it; (3) a notice of the preconditions governing the consumer's right not to pay for purchases of unsatisfactory goods and services; and (4) a notice informing the consumers that complaints regarding purchases of unsatisfactory goods or services should be made in writing.  The plaintiff has withdrawn all other claims.

The plaintiff has not suffered any actual damages. Instead he seeks the maximum statutory damages available under 15 U.S.C. § 1640(a)(2) plus fees and costs, as well as injunctive relief.

The defendant now moves for summary judgment.

## II.

The standard for granting summary judgment is well established.  "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., LP, 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine

issues of material fact to be tried, not to deciding them.  Its
duty, in short, is confined at this point to issue-finding; it
does not extend to issue-resolution." Gallo, 22 F.3d at 1224.
The moving party bears the initial burden of "informing the
district court of the basis for its motion" and identifying the
matter that "it believes demonstrate[s] the absence of a genuine
issue of material fact." Celotex, 477 U.S. at 323.  The
substantive law governing the case will identify those facts
which are material and "[o]nly disputes over facts that might
affect the outcome of the suit under the governing law will
properly preclude the entry of summary judgment." Anderson v.
Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a
court must resolve all ambiguities and draw all reasonable
inferences against the moving party.  See Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)
(citing United States v. Diebold, Inc., 369 U.S. 654, 655
(1962)); see also Gallo, 22 F.3d at 1223.  Summary judgment is
improper if there is any evidence in the record from any source
from which a reasonable inference could be drawn in favor of the
non-moving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d
29,37 (2d Cir. 1994).  If the moving party meets its burden, the
non-moving party must produce evidence in the record and "may
not rely simply on conclusory statements or on contentions that

the affidavits supporting the motion are not credible . . . ."
Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir.
1993) (citations omitted); see also Scotto v. Almenas, 143 F.3d
105, 114-15 (2d Cir. 1998) (collecting cases).

### III.

The defendant offers four arguments in support of its
motion for summary judgment.  First, the defendant contends that
statutory damages are not available for the plaintiff's claims.
Next, the defendant argues that each of the claims fails on the
merits because the omitted disclosures are inapplicable to the
account at issue and because the BRN is not required to mirror
identically the Model Form.  The defendant then contends that
even if there is a violation, it would be hypertechnical, and
therefore not actionable.  Finally, the defendant suggests that
the plaintiff is barred from bringing this suit because of a
notice and cure provision in the credit agreement between the
parties.  Each argument is considered in turn.

### A.

TILA makes available statutory damages of between $500 and
$5000 for individuals and up to $1,000,000 in class actions for
claims, such as the present one, relating to violations of
certain enumerated disclosure requirements for open end consumer
credit plans.  15 U.S.C. § 1640(a)(2).  Statutory damages are
not available for violations of TILA's disclosure requirements

unless they are specifically enumerated in § 1640(a).  Turk v. Chase Manhattan Bank USA, N.A., No. 00cv1573, 2001 WL 736814, at *2 (S.D.N.Y. June 11, 2001) (holding that statutory damages are not available for a violation of a section of the statute not enumerated in § 1640); accord Kelen v. World Fin. Network Nat'l Bank, 763 F. Supp. 2d 391, 393–94 (S.D.N.Y. 2011) (holding that statutory damages are not available for a violation of a regulation promulgated pursuant to a statutory provision not enumerated in § 1640); see also Rubinstein v. Department Stores Nat. Bank, 955 F. Supp. 2d 260, 262 (S.D.N.Y. 2013) (collecting cases).

TILA also grants authority to the Bureau to "prescribe regulations to carry out the purpose of [TILA]."  15 U.S.C. § 1604(a).  These regulations "may contain such additional requirements, classifications, differentiations, or other provisions, and may provide for such adjustments and exceptions for all or any class of transactions, as in the judgment of the Bureau are necessary or proper to effectuate the purposes of this subchapter, to prevent circumvention or evasion thereof, or to facilitate compliance therewith."  Id.

The defendant contends that the plaintiff's claims are based entirely on violations of Regulation Z, rather than any provision enumerated in § 1640(a), and therefore statutory damages are not available.  The defendant is doubly mistaken.

8

The violations alleged arise out of both Regulation Z and the
TILA statute itself, and in certain cases, as here, a violation
of Regulation Z can give rise to statutory damages.  "If a
violated Regulation Z is promulgated pursuant to one of the
provisions cited in Section 1640(a), courts have permitted an
award of statutory damages.  By contrast, if a court is unable
to conclude that the violated regulation was promulgated
pursuant to a provision listed in Section 1640(a), statutory
damages have been disallowed."  Rubinstein, 955 F. Supp. 2d at
263 (internal citations omitted).

     One of the provisions specifically enumerated in § 1640 is
15 U.S.C. § 1637(a), which sets out TILA's disclosure
requirements for open-end consumer credit plans.  Section 1637
requires that before an open-end consumer credit account (such
as a credit card) is opened, the creditor must provide the
consumer with a BRN that includes a statement "of the protection
provided by sections 1666 and 1666i of this title to an obligor
and the creditor's responsibilities under section[] . . . 1666i
of this title."  15 U.S.C. § 1637(a)(7).  Sections 1666 and
1666i describe a credit card holder's rights with regard to
correcting billing errors and disputing charges.

     Section 1637(a)(7) also provides that the account-opening
BRN must be stated "in a form prescribed by regulations of the
Bureau."  15 U.S.C. § 1637(a)(7).  The Bureau's regulations

governing Account Opening Disclosures are found in 12 C.F.R.
§ 1026.6, which provides "[a] creditor shall disclose, to the
extent applicable: . . . [a] statement that outlines the
consumer's rights and the creditor's responsibilities under
§§ 1026.12(c) and 1026.13 and that is substantially similar to
the statement found in Model Form G-3(A) in appendix G to this
part."  12 C.F.R. § 1026.6(b)(5)(iii).  Sections 1026.12(c) and
1026.13 mirror 15 U.S.C. §§ 1666i and 1666, respectively.  It
follows, then, that § 1026.6(b)(5)(iii) was promulgated pursuant
to § 1637(a)(7).

The connection between § 1026.6(b)(5)(iii) and § 1637(a)(7)
is obvious and explicit.  Section 1637(a)(7) directly references
Regulation Z by requiring that the BRN statement be "in a form
prescribed by regulations of the Bureau,"  and the language in
the regulation directly mirrors that of the statute.  <u>See</u>
<u>Rubinstein</u>, 955 F. Supp. 2d at 265 (holding that Regulation Z's
annual BRN requirements are obviously promulgated in accordance
with § 1637(a)(7) because that section requires an annual
disclosure of these rights "in a form prescribed by regulations
of the Bureau"); <u>see also</u> <u>Zevon v. Department Stores Nat. Bank</u>,
No. 12cv7799, 2013 WL 5903024, at *4 (S.D.N.Y. Nov. 4, 2013)
(finding statutory damages available for violation of regulation
promulgated pursuant to § 1637(a)(7)); <u>Schuster v. Citibank</u>
<u>(South Dakota) N.A.</u>, No. 00cv5940, 2002 WL 31654984, at *4

10

(S.D.N.Y. Nov. 21, 2002) (finding that statutory damages are available for violating a footnote in Regulation Z because the regulation implements § 1637(b)(5) which is enumerated in § 1640(a)).

The defendant cites a list of inapposite cases for the contention that statutory rights are not available for violations of Regulation Z.  Each of these cases is distinguishable because each involves a provision of Regulation Z that is not promulgated by a section of TILA enumerated in § 1640(a).  Moreover, the obvious and explicit connection between § 1637(a)(7) and Regulation Z that is highlighted in Rubinstein is absent from each of these cases.  See Schwartz v. HSBC Bank USA, N.A., No. 13cv769, 2013 WL 5677059, at *6 (S.D.N.Y. Oct. 18, 2013) (no statutory damages where regulation allegedly violated imposes a requirement not imposed by the statute and where the statute was not violated); Schnall v. HSBC Bank Nevada N.A., No. 11cv8942, 2013 WL 1100768, at *4-5 (S.D.N.Y. Mar 18, 2013) (noting that in some instances, statutory damages are available for violations of Regulation Z, but not when the plaintiff "does not provide any support for the conclusory assertion that the year-to-date disclosures of 12 C.F.R. § 226.7(b)(6)(ii)-(iii) implement 15 U.S.C. § 1637(b)(4)"); Kelen, 763 F. Supp. 2d at 393 (statute and corresponding regulation allegedly violated were not within the

11

list of violations in § 1640(a) that support an award of statutory damages); Turk, 2001 WL 736814, at *2 (same).  In this case it is clear that the allegedly violated provision of Regulation Z was promulgated by a provision of TILA specifically enumerated by § 1640(a). Therefore, statutory damages are available.

Moreover, the violation alleged is also a direct violation of § 1637(a)(7) itself.  As discussed above, this section requires that the creditor inform the consumer of the rights provided by §§ 1666 and 1666i, which establish the rights of consumers with regard to billing disputes and unsatisfactory purchases.  If, as the plaintiff contends, the defendant failed adequately to disclose these rights, then the defendant has violated § 1637(a)(7), a provision for which statutory damages are undoubtedly available under § 1640(a).

Therefore, this argument fails to establish that the defendant should prevail as a matter of law.

**B.**

The defendant argues that the plaintiff's claims should be dismissed because they are inapplicable to the account at issue and because TILA disclosures are not required to be identical to the Model Form.

**1.**

The plaintiff's first claim is that the BRN did not warn the consumer about time constraints applicable to making billing disputes.  The Model Form provides that such a dispute should be made "[a]t least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong."  12 C.F.R. pt. 1026 app. G-3(A).  Additionally, Regulation Z provides that "the card issuer shall not deduct any part of the disputed amount or related finance or other charges if a billing error notice is received any time up to 3 business days before the scheduled payment date."  12 C.F.R. § 1026.13(d)(1).  However, the TILA statute itself is silent on this three-day rule.  In any event, the defendant argues that this omission is not actionable because it did not offer an automated payment plan at any time relevant to this lawsuit and the creditor is not required to use the exact language of the Model Form.  The defendant is correct and the plaintiff's first claim fails.

Use of the Model Form is not required by TILA.  15 U.S.C. § 1604(b) ("Nothing in this subchapter may be construed to require a creditor or lessor to use any such model form or clause prescribed by the Bureau under this section.")  Rather, the model form provides a safe harbor from liability for the creditor, making it easier to comply with the statute.  Id.

13

("The purpose of such model disclosure shall be to facilitate compliance with the disclosure requirements of this subchapter . . . and to aid the borrower or lessee in understanding the transaction by utilizing readily understandable language to simplify the technical nature of the disclosures."). Therefore, the claim cannot rely on strict compliance with the Model Form.

The plaintiff has made no showing of the availability of an automated payment plan for the Barneys Card, and § 1637(a) only requires that account opening disclosures be made "to the extent applicable," and therefore the defendant was not required to include the three-day disclosure on its BRN. See 15 U.S.C. § 1637(a); see also Strubel v. Comenity Bank, No. 13cv4462, slip op. at 7-9 (S.D.N.Y. January 23, 2015) (granting summary judgment for identical claim where defendant did not offer an automated payment plan).

Moreover, the official commentary to Regulation Z states that the Model Form may be "modified by deleting inapplicable information, such as . . . [t]he paragraph concerning stopping a debit in relation to a disputed amount, if the creditor does not have the ability to debit automatically the consumer's savings or checking account for payment." 12 C.F.R. pt. 1026, supp. I, part 5. This commentary warrants deference by this Court. See Chase Bank USA N.A. v. McCoy, 131 S. Ct. 871, 882 (2011) ("[T]he Official Staff Commentary promulgated by the [Bureau] as an

interpretation of Regulation Z may warrant deference as a general matter."); Anderson Bros. Ford v. Valencia, 452 U.S. 205, 219 (1981) ("[T]he [Bureau's] regulation implementing this legislation should be accepted by the courts, as should the [Bureau's] interpretation of its own regulation.").  The paragraph was inapplicable because there is no evidence that the defendant offered automated billing.  The commentary makes it clear that the paragraph could be omitted if it was inapplicable.  Therefore, the plaintiff's first claim fails and summary judgment is granted with regard to the first claim.

### 2.

The plaintiff next claims that the defendant failed to disclose adequately its duty to respond to billing disputes. Once again, the defendant's disclosure was not identical to the Model Form.  The Model Form indicates that when a consumer makes a proper billing dispute, the creditor must respond within thirty days to inform the consumer that the dispute has been received, 12 C.F.R. pt. 1026, app. G-3(A), but the defendant's BRN qualifies this response time, stating that it must acknowledge the dispute within thirty days "unless we have corrected the error by then."  Compl. Ex. B.

The defendant argues that this deviation is not actionable because it is not required to use the exact language of the Model Form, and the TILA statute does not require a response

indicating that the dispute has been received if the error is corrected in a timely manner.  The defendant is correct. Section 1666 provides that the creditor must acknowledge receipt of a dispute "unless the action required by subparagraph (B) is taken within such thirty-day period."  15 U.S.C. § 1666(a)(A). Subparagraph (B) requires the creditor to "make appropriate corrections" or "send a written explanation or clarification" to the consumer.  Id. at § 1666(a)(B).  The plain language of this section indicates that the creditor is not required to acknowledge receipt of a dispute within thirty days if the error has been corrected by then.  See Strubel, No. 13cv4462 at 10. Furthermore, the language of 12 C.F.R. § 1026.13 mirrors the requirement of § 1666, indicating that the creditor need not acknowledge receipt of the dispute if the creditor corrects the error within thirty days.

Accordingly, the language of the defendant's BRN discloses the rights and responsibilities found in § 1666 as well as its implementing regulation, 12 C.F.R. § 1026.13, but it does differ somewhat from the Model Form.  The Model Form, however, is intended to make it easier for the creditor to comply with the statute—using the form is a safe-harbor from civil liability and is not required.  See 15 U.S.C. § 1604.  Accordingly, summary judgment is granted with regard to the plaintiff's second claim.

**3.**

The plaintiff's third claim is that the defendant's BRN did not disclose properly the limits on claims made regarding unsatisfactory purchases.  The defendant incorrectly argues that this claim is based entirely on the Model Form.

The Model Form indeed includes the following language:

> Your Rights If You Are Dissatisfied With Your Credit
> Card Purchases
>
> If you are dissatisfied with the goods or services that you have purchased with your credit card and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.
>
> To use this right, all of the following must be true:
>
> > 1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
> > 2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
> > 3. You must not yet have fully paid for the purchase.

12 C.F.R. pt. 1026, app. G.  But this model disclosure is rooted firmly in the statutory language of TILA and Regulation Z.

Section 1666i provides "a card issuer who has issued a credit card to a cardholder pursuant to an open end consumer

credit plan shall be subject to all claims (other than tort claims) and defenses arising out of any transaction in which the credit card is used as a method of payment. . . ."  15 U.S.C. § 1666i(a).  This means that a credit card holder may refuse to pay for purchases of unsatisfactory goods or services.  However, this right comes with several caveats, including that the purchase must have been made with the credit card within the consumer's home state, or within 100 miles of home, and the purchase price must have exceeded $50.  15 U.S.C. § 1666i(a). Section 1637(a)(7) requires the creditor to disclose this right "in a form prescribed by regulations of the Bureau."  15 U.S.C. § 1637(a)(7).  The Bureau, through Regulation Z, requires a creditor to provide an account-opening "statement that outlines the consumer's rights and the creditor's responsibilities under § 1026.12(c) . . . that is substantially similar to the statement found in" the Model Form.  12 C.F.R. § 1026.6(b)(5)(iii).  Section 1026.12(c) mirrors § 1666i, discussed above, including the same limitations.  12 C.F.R. § 1026.12(c).

The relevant portion of the defendant's BRN is much shorter than the Model Form, omitting the three prerequisites to such a claim that are laid out in the Model Form.  It states:

Special Rule for Credit Card Purchases

> If you have a problem with the quality of property or services you purchase with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services.

Compl. Ex. B.  The plaintiff argues that this violates § 1637(a)(7) because it does not adequately explain two of the prerequisites for making a claim under § 1666i: (1) that the purchase must be made with the credit card, and (2) that the purchase price must exceed $50 and be made within a certain proximity of the customer's home.

The plaintiff's first contention is mistaken.  The defendant's disclosure is entitled "special rule for credit card purchases."  It states that this rule applies to "property or services you purchase with a credit card."  Although it does not use the exact language found on the Model Form,[1] a reasonable consumer would understand that the right applies only to purchases made with a credit card.  Courts should "evaluate the adequacy of TILA disclosures from the vantage point of a hypothetical average consumer—a consumer who is neither particularly sophisticated nor particularly dense."  Karakus v. Wells Fargo Bank N.A., 941 F. Supp. 2d 318, 330 (E.D.N.Y. 2013)

---

[1] The Model Form explicitly provides: "You must have used your credit card for the purchase.  Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify."  12 C.F.R. pt. 1026, app. G-3(A).

(quoting Palmer v. Champion Mortg., 465 F.3d 24, 28 (1st Cir. 2006)).  The plaintiff suggests that unsophisticated consumers might think they can avail themselves of this right even if they make a purchase with a cash advance from the credit card or with a convenience check.  However, a consumer would have to be fairly dense to think that a "special rule for credit card purchases" would apply to cash advances and convenience check purchases.  The defendant's BRN, in this regard, is sufficiently similar, therefore, to the Model Form, and does not violate TILA's disclosure requirements.  See Strubel, No. 13cv4462 at 11 (holding that a "Special Rule For Credit Card Purchases" applies only to credit card purchases).

The plaintiff's second point is more problematic for the defendant.  A typical consumer would not be aware of the prerequisites for making a claim under § 1666i, including that the purchase price must exceed $50 and that the purchase must be made within a certain proximity of the credit card holder's home.  By omitting some of the language found in the Model Form, the defendant has overstated the protections provided by § 1666i, and therefore has not adequately informed the consumer of these protections "in a form prescribed by regulations of the Bureau" as required by § 1637(a)(7).

The defendant has not argued that the omission was acceptable because the defendant provides broader protections or

that it has a policy of honoring such claims regardless of statutory limitations, nor would such an argument be material. This Court has previously explained that:

> The disclosures mandated by 15 U.S.C. § 1637(a)(7) and 12 C.F.R. § 1026.6(b)(5)(iii) pertain to a consumer's rights and obligations under TILA, and are thus necessary regardless of the consumer's rights and obligations under [the] agreement with the creditor. . . . A consumer's rights pursuant to TILA to inquire about and challenge charges, and to receive disclosures of such rights, are independent of any additional rights the consumer may have pursuant to her agreement with the creditor. TILA not only requires that creditors facilitate, investigate, and respond to customer inquiries about and challenges to charges, but it also requires creditors to inform their customers of these requirements and provides a right of action for failing to make such a disclosure.

Taub v. Big M, Inc., 719 F. Supp. 2d 325, 327 (S.D.N.Y. 2010). Therefore, the omission is a violation of TILA's account-opening disclosure requirements. [2]

**4.**

Finally, the plaintiff's fourth claim is that the BRN failed to indicate clearly that a dispute about unsatisfactory

---

[2] In Strubel, Judge Castel found that the disclosure in that case in the notice concerning unsatisfactory purchases was consistent with Regulation Z. No. 13cv4462 at 12. However, in that case, the disclosure specifically explained that the special rule for credit card purchases was limited to purchases made in the purchaser's home state or within 100 miles of the purchaser's mailing address and applied only where the purchase price exceeded $50. Complaint at Ex. B Strubel, No. 13cv4462 (Document No. 1-1 at 5). That was the limitation provided by the statute and by Regulation Z that was omitted from the BRN in this case.

merchandise must be made in writing.  The Model Form provides
that claims regarding unsatisfactory goods and services should
be made in writing. 12 C.F.R. pt. 1026, app. G-3(A) ("If all of
the criteria above are met and you are still dissatisfied with
the purchase, contact us in writing [or electronically].")
(bracketed text in original).  This argument was recently
rejected in a case involving a nearly identical BRN.  Strubel,
No. 13cv4462 at 12-13 (holding that any "in writing" requirement
is satisfied by indicating at the beginning of the BRN that
billing disputes should be made in writing even if the paragraph
discussing unsatisfactory purchases omits such a notice).
Moreover, this requirement is not found in 12 C.F.R. §
1026.12(c) or 15 U.S.C. § 1666i.  Adding language that suggests
that such a claim must be made in writing unnecessarily
restricts the scope of the right and cannot be required in the
account opening BRN even if the Model Form suggests such
language.

The plaintiff argues that the additional "in writing"
requirement found in the Model Form must be followed because
Congress delegated to the Bureau the power to elaborate the
details of TILA.  See 15 U.S.C. § 1604(a) ("The Bureau shall
prescribe regulations to carry out the purposes of this
subchapter. . . .  [S]uch regulations may contain such
additional requirements . . . as in the judgment of the Bureau

22

are necessary or proper to effectuate the purposes of this
subchapter, to prevent circumvention or evasion thereof, or to
facilitate compliance therewith."). But this "in writing"
requirement can only be found in a model form in an appendix to
Regulation Z, and TILA explicitly indicates that the Model Form
need not be used in order to comply with the Statute. 15 U.S.C.
§ 1604(b) ("Nothing in this subchapter may be construed to
require a creditor or lessor to use any such model form or
clause prescribed by the Bureau under this section."). 
Moreover, the official commentary to the Model Form indicates
that it is optional for a creditor's BRN to include
"instructions for consumers, at the consumer's option, to
communicate with the creditor electronically or in writing." 12
C.F.R. pt. 1026, supp. I, part 5, app. G-3. As discussed above,
this commentary warrants deference. McCoy, 131 S. Ct. at 882;
Anderson Bros. Ford, 452 U.S. at 219. Accordingly, the language
concerning how to contact the creditor is optional, and its
omission is not a TILA violation. Therefore, summary judgment
is granted with regard to the fourth claim.

### C.

The defendant argues that even if the BRN violates TILA,
the violation can only be considered hypertechnical and is
therefore not actionable. Because three of the plaintiff's
claims fail on the merits, the only remaining claim to consider

23

is the alleged violation of 15 U.S.C. § 1637(a)(7) based on a
failure to explain the prerequisites to making a claim regarding
the purchase of unsatisfactory goods or services as described in
15 U.S.C. § 1666i and 12 C.F.R. § 1026.12(c).  This alleged
violation, though technical, is not hypertechnical as the term
is used by the defendant.  Therefore, the motion for summary
judgment is denied with regard to the plaintiff's third claim.

TILA is a "remedial statute . . . [to] be construed
liberally in favor of the consumer," and "it is not necessary
for a TILA plaintiff to establish that he incurred actual
damages as a result of a technical violation of TILA in order to
seek statutory damages."  Kurz v. Chase Manhattan Bank, 273 F.
Supp. 2d 474, 477-78 (S.D.N.Y. 2003).  On the other hand, courts
in this Circuit have dismissed TILA claims for being
hypertechnical.  See, e.g., Gambardella v. G. Fox & Co., 716
F.2d 104, 118 (2d Cir. 1983) (directing dismissal of TILA claim
where the disclosures "read as a whole" clearly disclosed the
required interest rates); Schwartz v. HSBC, 2013 WL 5677059, at
*8-9 (dismissing as hypertechnical a claim that not listing the
balance subject to interest rate is a violation when the
interest rate is 0%) (collecting cases).

However, the types of claims dismissed as "hypertechnical"
have been more insignificant than the alleged violation in this
case.  The seminal Court of Appeals decision on this subject

24

explains that TILA does not require "perfect disclosure," but
rather merely "disclosure which clearly reveals to consumers the
cost of credit." Gambardella, 716 F.2d at 118 (dismissing a
TILA claim as too technical where the statements "read as a
whole" disclosed the required interest rates); see also Turner
v. General Motors Acceptance Corp., 180 F.3d 451, 457 (2d Cir.
1999) (TILA requires "meaningful disclosure," not "more
disclosure") (citing Ford Motor Credit Co v. Milhollin, 444 U.S.
555, 568 (1980)).  An unactionable hypertechnical claim is one
that is based on a disclosure that technically violates TILA,
but is unlikely to mislead consumers because the disclosure
taken as a whole clearly reveals the rights and obligations of
the creditor and the consumer that are required to be disclosed.

    Courts in this Circuit have found such non-actionable
violations to include: imparting extraneous and unnecessary
disclosures about interest rates charged, Gambardella, 716 F.2d
at 118; inaccurately disclosing the balance subject to interest
on a monthly statement as $0.00 when the balance was actually
greater, but the interest rate was 0%, Schwartz v. HSBC, 2013 WL
5677059 at *8-9; providing one clear and accurate copy of a
borrower's rights notice when the regulation requires two,
Karakus, 941 F. Supp. 2d at 334-35; Kahraman v. Countrywide Home
Loans, Inc., 886 F. Supp. 2d 114, 120-21 & n.4 (E.D.N.Y. 2013)
(same); failing to specify that the interest rate is determined

as of the date of the credit application where the interest rate was clearly set out, Stein v. JPMorgan Chase Bank, 279 F. Supp. 2d 286, 292-93 (S.D.N.Y. 2003); and treating a negative balance owed as zero for the purpose of disclosing interest calculations where the resulting interest charged is unaffected, Hale v. MBNA America Bank, N.A., No. 99cv8831, 2000 WL 1346812, at *5 (S.D.N.Y. Sept. 18, 2000);  see also In re DiVittorio, 670 F.3d 273, 295 (1st Cir. 2012) (dismissing a claim that payment schedule did not disclose that payments were to be made on a monthly basis  when notice stated 360 payments were to be paid over 30 years); Rodrigues v. Members Mortg. Co., 323 F. Supp. 2d 202, 207 (D. Mass. 2004) (dismissing as de minimis a claim where TILA disclosure failed to provide initial creditor's address as required by Regulation Z when assignee's address was provided and assignee was designated to receive rescission notices).

The legislative history is also instructive.  When Congress amended TILA in 1979, it sought to "limit creditor civil liability for statutory penalties to only significant violations."  S. Rep. No. 96, 96th Con., 1st Sess. 2-3 (1978), U.S. Code Cong. & Admin. News at 280, 280-82, reprinted in 1979 WL 10376.  This was accomplished by removing civil liability for certain claims.  Id. at 285.  But the Senate report indicates that it believed the remaining disclosure requirements for credit card accounts to be very important:

26

> With regard to open end credit, statutory penalties
> would continue to attach to most [then-]current
> disclosures. The committee believes that this is
> appropriate because of the importance of this
> information and less creditor difficulty with
> compliance. . . . These disclosures are so important
> in credit shopping that a creditor who gives
> inaccurate information should face a definite penalty.
> . . . There will be many instances where actual
> damages alone will provide little or no effective
> remedy for the consumer who relied on inaccurate
> disclosures to his detriment.

Id. at 295. Because Congress left the disclosure requirements with regard to 1666i rights among those for which violations would lead to statutory damages, Congress clearly thought the disclosures at issue here to be "so important" as to warrant a "definite penalty" when stated inaccurately.

Simply stated, if the defendant's BRN is read side-by-side with a BRN that is substantially similar to the Model Form and unquestionably compliant with TILA, a typical consumer might notice that there are fewer limitations to the rights described in the defendant's agreement. This could unfairly lead the consumer to believe that the consumer's rights are broader under the defendant's credit card account. But those rights are derived from TILA rather than the agreement with the creditor,[3] and therefore the consumer would be mistaken. Consequently,

---

[3] The first paragraph of the defendant's BRN states "[t]his notice contains important information about your right and our responsibilities under the Fair Credit Billing Act." Compl. Ex. B. The Fair Credit Billing Act is an amendment to TILA that was enacted in 1974. This statement indicates that the subsequent rights are derived from the statute.

this violation is not so technical as to be unlikely to mislead consumers.  See Gambardella, 716 F.2d at 118.  Therefore, the motion for summary judgment with regard to the third claim is denied.

### D.

The defendant also argues that summary judgment should be granted because the plaintiff failed to comply with the notice and cure provision in the modified credit agreement.  The provision requires a Barneys Card holder to provide the defendant with written notice of any claim that arises out of or relates to the credit agreement and a reasonable opportunity to cure the issue within thirty days prior to bringing a lawsuit. Provisions like this are not applicable to TILA's disclosure requirements.

Notice and cure provisions "do not apply to suits alleging deceptive business practices (i.e., non-disclosures under TILA), because TILA claims 'arise out of' alleged violations of the statute, rather than from any breach of contract."  Taub v. World Financial Network Bank, 950 F. Supp. 2d 698, 701-02 (S.D.N.Y. 2013) (citing Abercrombie v. Wells Fargo Bank, N.A., 417 F. Supp. 2d 1006 (N.D. Ill. 2006); Schmidt v. Wells Fargo Home Mortg., No. 3:11cv59, 2011 WL 1597658, at *3 (E.D. Va. Apr. 26, 2011)).  In this case, the plaintiff does not allege that the defendant has violated the credit agreement; rather the

plaintiff alleges that the defendant violated TILA by failing to provide the required disclosure in connection with opening the credit account.  The present claim does not arise out of the credit card agreement between the customer and the creditor, and therefore, notice to the creditor is not a precondition to suit.

Moreover, "[a]ny waiver of the right to bring a TILA claim is . . . unenforceable." Id. at 703 (citing Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 704 (1945)).  The defendant argues that the notice and cure provision is not a waiver of any TILA rights because it simply requires the plaintiff to give the defendant an opportunity to cure an infraction prior to suit. However, in this case, a cure is impossible because the alleged violation occurred when the Barneys Card accounts were opened with inadequate disclosure—it is now too late to give the customers adequate account-opening disclosures because the disclosures must be made prior to opening the accounts. Therefore, the plaintiff's failure to comply with the notice and cure provision does not warrant granting the motion for summary judgment.

### E.

As a last straw, the defendant also points out that the plaintiff cannot seek injunctive relief.  The defendant claims that it is clear that "injunctive relief is not a remedy available under TILA." See Rubinstein 955 F. Supp. 2d at 263

29

n.2 (citing <u>Christ v. Beneficial Corp.</u>, 547 F.3d 1292, 1298 (11th Cir. 2008)).  The plaintiff provided no response to this contention and conceded at oral arguments that injunctive relief is not available.  Therefore, summary judgment is granted dismissing the claim for injunctive relief.

CONCLUSION

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed, the arguments are either moot or without merit.  For the foregoing reasons, the defendant's motion for summary judgment is **granted in part and denied in part.  The Clerk is directed to close Docket No. 31.** SO ORDERED.

Dated:    New York, New York
          February 2, 2015                _____/s/_____
                                               John G. Koeltl
                                          United States District Judge